IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jody W., ) | |
| ) | |
|     *Plaintiff,* ) | |
| ) | Case No. 17 CV 50290 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     *Defendant.* ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Jody W. brings this action under 42 U.S.C. § 405(g), seeking a remand of the decision denying her social security disability benefits. For the reasons set forth below, the Court is compelled to remand the case despite the apparent weakness of Plaintiff's claim. The Court is unsure whether the administrative law judge viewed Plaintiff's case as so weak that a medical expert was not needed at the hearing. If that was the thought process, it backfired. Had a medical expert provided testimony (at a hearing or later) that supported the administrative law judge's assumptions, a remand would have been unlikely.

### I. BACKGROUND[1]

On May 13, 2014, Plaintiff filed an application for disability insurance benefits. R. 148. Plaintiff alleged a disability beginning on May 10, 2012 because of her panic and anxiety disorder. R. 148 (May 2014), 169 (May 2014); R. 205

---
[1] The following facts are only an overview of the medical evidence provided in the administrative record.

(July 2014); R. 214 (September 2014); R. 226 (February 2015). Her husband reported the same impairments in July 2014 and August 2015. R. 180, 239. It was not until Plaintiff filed a disability report in October 2015 that she first reported seeing her primary care physician for knee pain. R. 250-51. However, Plaintiff still did not include knee pain as part of her disability application. R. 250 ("Since you last told us about your medical conditions, do you have any NEW physical or mental conditions? No."). Nevertheless, Plaintiff's counsel raised the issue of knee pain in her pre-hearing brief to the Administrative Law Judge ("ALJ"). R. 270.

Plaintiff first reported knee pain to her primary care physician in September 2015 during her yearly physical. R. 366. Plaintiff reported that she had been suffering from left knee pain since September 2014. R. 366. Shortly thereafter, she was referred to an orthopedist. R. 356. Plaintiff informed her orthopedist that she had been suffering from bilateral knee pain since September 2013. R. 356. Plaintiff was taking Aleve to manage her pain. R. 356. At her September 2015 appointment, Plaintiff received steroid injections in both knees and a prescription cream for her pain. R. 358-59. Plaintiff reported minimal relief from her injections and only temporary relief from the cream. R. 351. In November 2015, Plaintiff's orthopedist recommended physical therapy and an MRI to determine whether Plaintiff would benefit from surgery. R. 352. Plaintiff declined because she was leaving for the winter and stated she would follow up with her orthopedist in spring. R. 352. No additional treatment records were provided.

On September 13, 2016, Plaintiff, represented by the same attorney representing her in this appeal, testified at a hearing before an ALJ. R. 39-63. Plaintiff was then 57 years old. Plaintiff testified that she had pain and swelling in both knees. R. 47, 56. She had braces for her knees but was unable to wear the brace on her right knee because it put pressure on her tibia. R. 47. Plaintiff wore her left knee brace if she was going "to be real active" such as going to the grocery store, taking her dog for a short walk and cleaning her house. R. 48. However, Plaintiff needed to take breaks from her activities and elevate her legs to reduce swelling. R. 48. Plaintiff was unable to kneel or climb stairs. R. 48, 51.

Plaintiff had a topical cream that she put on her knees every morning and night that relieved her pain for a "couple hours." R. 49. She also took Advil and Tylenol as needed. R. 49. In 2015, Plaintiff received injections in both of her knees, but claimed they only relieved her pain for about a week. R. 49-50. Plaintiff was also under the impression that her doctor did not recommend surgery on her knees. R. 56.

Plaintiff testified that she left her cashier job in 2012, in part, because she could not stand for more than two hours at a time. R. 44. In 2015, Plaintiff was able to walk three miles a day in her pool, but she was no longer able to walk that far. R. 52-53. Plaintiff also testified that she had not done yardwork since approximately 2013 or 2014. R. 52. Plaintiff traveled to Florida in the winter because of the arthritis in her knees. While in Florida, Plaintiff cleaned her sister's hair salon twice a week for a couple hours. R. 43.

The ALJ also heard testimony from Susan Entenberg, a vocational expert ("VE"). The VE testified that Plaintiff's past work as a sterile processor, identified as DOT 079.374-022, was categorized as light work, but medium as performed by Plaintiff. R. 59. The VE testified that an individual with an RFC the same as Plaintiff's would be able to perform work as a sterile processor as generally performed. R. 59-60. However, the VE noted that the job required "standing and walking the entire day." R. 60. The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). R. 61.

The ALJ did not call an impartial medical expert at the hearing and ultimately denied Plaintiff's request for benefits. R. 20-32. The ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the knees bilaterally and panic attacks. R. 22. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 22. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions and could perform her past work as a sterile processor as generally performed. R. 24, 31.

## II. STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the

decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

### III. DISCUSSION

On appeal, Plaintiff challenges the ALJ's determination that she could perform light work despite suffering from degenerative joint disease in both of her knees. Specifically, Plaintiff faults the ALJ for failing to call an impartial medical expert at the hearing to opine on her knee pain and physical limitations. The Court agrees that the RFC is not supported by substantial evidence.

A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1). "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 U.S. Dist. LEXIS 12962, at *40 (N.D. Ill. Feb. 2, 2012). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5, at *19.

Here, the ALJ determined that Plaintiff had the RFC to perform light work in that she could stand and/or walk approximately six hours in an eight-hour workday and could sit for approximately six hours in an eight-hour workday; she might never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs, occasionally crouch, and never kneel or crawl; and she must stand or walk every hour after being seated. R. 24. Based on this RFC, the ALJ determined that Plaintiff had the capacity to perform her past relevant work as a sterile processor as generally performed (light work). R. 31.

The ALJ constructed this RFC without the benefit of any medical opinions relating to Plaintiff's knees or physical abilities generally. *See Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) (finding the ALJ's RFC determination inadequate without a medical opinion or functional assessment to discredit the plaintiff's testimony that she was unable to perform light work). Plaintiff's treating

physicians did not provide any opinions about her physical limitations. The state-agency consultants only evaluated Plaintiff's mental impairments.[2] Additionally, the ALJ failed to call a medical expert at the hearing. *See Brown v. Berryhill*, No. 16 CV 50389, 2018 U.S. Dist. LEXIS 58640, at *2, 14 (N.D. Ill. Apr. 2, 2018) (remanding where the ALJ determined the plaintiff's RFC without the benefit of a medical opinion, a consultative examination or an impartial medical expert).

This left the ALJ with only Plaintiff's testimony and the medical records relating to her knee pain. Even with this evidence, it is not clear how the ALJ determined Plaintiff's specific limitations, especially that Plaintiff could be on her feet six hours in an eight-hour workday.

The ALJ limited Plaintiff to light work, noting that Plaintiff's physical examinations showed no knee impairments before September 2015, despite Plaintiff's conflicting reports that she had left knee pain since September 2014 and bilateral knee pain since September 2013. R. 29. The ALJ also noted that Plaintiff maintained normal gait and station in 2014 and 2015. R. 28. In 2015, Plaintiff also reported the ability to complete household chores and yard work, despite testifying that she gave up yard work in 2013 or 2014. R. 28.

The ALJ further noted that Plaintiff's treatment for her knees was limited and consisted primarily of the use of prescription medications. R. 29. The ALJ also

---

[2] It is not surprising that the state-agency consultants opined only on Plaintiff's mental impairments because they rendered their decisions in September 2014 and September 2015, before Plaintiff had even reported knee pain to her doctors. R. 64-70, 72-79.

faulted Plaintiff for failing to follow up with physical therapy or an MRI recommended by her orthopedist. R. 29.

Certainly, these are all legitimate concerns to consider when formulating Plaintiff's RFC and could cause a reasonable person to question Plaintiff's credibility. In reviewing this evidence, the Court is not saying that Plaintiff would be unable to perform light work.

But the testimony and medical records alone do not support a finding that Plaintiff can be on her feet for six hours a day. *See Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) (finding that a report of a normal gait alone does not support a finding that the plaintiff could walk or stand six hours out of an eight-hour workday). Additionally, failing to follow up on medical care to evaluate the need for surgery cuts against Plaintiff's alleged disability. However, the ALJ did not explore this at the hearing and therefore failed to determine if there was a good reason why Plaintiff did not seek this medical treatment. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A]n ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").

This is not a case where the record was devoid of any evidence relating to Plaintiff's physical impairments. Plaintiff's counsel not only alerted the ALJ to the knee impairments in her pre-hearing memorandum, but Plaintiff's testimony at the hearing focused on her knee pain. There was also enough evidence in the record for the ALJ to determine that Plaintiff's degenerative joint disease was a severe impairment. However, there was no opinion evidence to support the ALJ's

determination that Plaintiff could perform light work.  *See Brown*, No. 16 CV 50389, 2018 U.S. Dist. LEXIS 58640, at *14 (remanding where the ALJ did not rely on any medical opinion and interpreted the meaning of "normal findings" and how they related to the plaintiff's specific symptoms as a layperson).  The ALJ should have postponed his decision to seek a medical opinion on Plaintiff's physical abilities and any restrictions resulting from her knee pain, such as a functional capacity assessment or an impartial medical expert to testify at a second hearing.  The failure to do so in this case requires a remand.  *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("Although Suide shares the blame for failing to clarify the record discrepancy regarding the length of Dr. Orris's treatment, it was the ALJ's responsibility to recognize the need for further medical evaluations of Suide's conditions before making her residual functional capacity and disability determinations."); *Green v. Apfel*, 204 F.3d 780, 781-82 (7th Cir. 2000) (finding the ALJ improperly "played doctor" where he relied on his own analysis of the plaintiff's medical records instead of having a physician examine the plaintiff or his records).

In addition to the problems with an unsupported RFC, the Court is also concerned with the ALJ's determination that Plaintiff had the RFC to work as a sterile processor.  The VE testified that the job required "standing and walking the entire day," but the ALJ explicitly found that Plaintiff could only be on her feet for approximately six hours in an eight-hour workday.  R. 60, 24.  This discrepancy was not explained in the ALJ's decision or at the hearing.

The Commissioner overlooks this discrepancy and instead maintains that the ALJ accommodated Plaintiff's inability to stand for long periods of time by allowing her to alternate between standing and sitting. Defendant's Brief at 4, Dkt. 16. This is incorrect for two reasons. First, the RFC only allowed for Plaintiff to stand after being seated for an hour, not alternate between standing and sitting. Second, the sterile processor job, which the ALJ determined Plaintiff could perform, would require Plaintiff to stand for long periods of time without relief.

This was made explicit at the hearing. The ALJ asked the VE if an individual could perform the plaintiff's past work if they "needed to stand or walk after being seated for one hour." R. 60. The VE responded "yes, since you're standing and walking the entire day. So you're, you're not sitting." R. 60. Although the VE agreed that the position was considered light work, she unequivocally found that the job would require an individual to be on their feet the entire workday. *See* 20 CFR § 404.1567(b) (stating that light work typically "requires a good deal of walking or standing"); SSR 83-10, 1983 SSR LEXIS 30, at *14 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."). Therefore, the requirements of Plaintiff's former work exceeded her RFC limits. Such a finding is detrimental to the ALJ's disability determination because in finding Plaintiff could perform her past relevant work, the ALJ did not proceed to step five.

The Court is aware that the record before the Court relating to Plaintiff's knee impairments does not make a strong case that she was disabled under the regulations. The ALJ's concerns about the lack of treatment and objective evidence and Plaintiff's conflicting account of her daily activities and symptoms are supported by the record and should be accounted for in the RFC determination. Nevertheless, this does not excuse the ALJ from building a logical bridge between the evidence in the record and his conclusions.

Accordingly, a remand is required to determine Plaintiff's RFC with the benefit of a supporting medical opinion, either from Plaintiff's treaters, the state-agency physicians or an independent medical expert. After determining Plaintiff's RFC, the ALJ should determine whether Plaintiff can perform her past relevant work or other work in the national economy.

Although this case is being remanded, the Court must point out a trend where counsel are failing to raise issues with the ALJs and Appeals Council and seem to be saving their arguments for this Court. *See James E. v. Berryhill*, No. 17 CV 50295, 2019 U.S. Dist. LEXIS 21521, at *6 (N.D. Ill. Feb. 11, 2019) ("One unfortunate but recurring aspect in disability appeals brought to this Court is that arguments raised here often were not raised during the administrative hearing even though they could have been raised there."). This is of particular concern in this case where Plaintiff was represented by the same attorney representing her in this appeal. Although counsel mentioned bilateral knee osteoarthritis in her pre-hearing brief before the ALJ, she made no effort to request medical opinion evidence

on the issue. R. 270. Additionally, when given the opportunity to raise any issues at the beginning of the hearing, counsel instead decided to stand on her pre-hearing memorandum. R. 42. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A] claimant represented by counsel is presumed to have made his best case before the ALJ.") (quoting *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)). On remand, counsel should be sure to raise all issues with the ALJ where they can be resolved in the first instance.

## IV. CONCLUSION

For the reasons stated in this opinion, Plaintiff's motion for summary judgment [11] is granted, and the Commissioner's motion [16] is denied. The decision of the ALJ is remanded for further proceedings consistent with this opinion.

Date: February 15, 2019

By: _____
Iain D. Johnston
United States Magistrate Judge